104 N.J. Super. 416 (1969)
250 A.2d 161
EVA CREGO AND ANTHONY J. CREGO, PLAINTIFFS,
v.
GLORIA MONFILETTO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JAMES V. BERGONZI, ERNEST MONFILETTO, RITA HAYNES, ALSO KNOWN AS RITA HAYES, FRANK HAYNES, ALSO KNOWN AS FRANK HAYES, JAMES McCARTHY, MRS. JAMES McCARTHY, ANTHONY D'URSO, UNITED BONDING INSURANCE CO. AND U.S. INTERNAL REVENUE SERVICE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 24, 1969.
*417 Mr. Frank A. Palmieri, attorney for plaintiffs (Mr. Ralph A. Yacavino appearing).
Messrs. Beninati & La Morte, attorneys for defendants Gloria Monfiletto and Ernest Monfiletto (Mr. Salvatore J. Beninati appearing).
HERBERT, J.S.C.
This is a suit for partition. James V. Bergonzi died February 1, 1965 without leaving a will. At death he owned an undivided one-half interest in a parcel of real estate located partly in East Orange and partly in Orange. He had no wife and no children, but was survived by a brother, several sisters and several nieces and nephews who were the children of a deceased sister.
Descent of the real estate of James Bergonzi is governed by N.J.S. 3A:4-4, which reads as follows:
"If there be no husband or widow, the intestate's property, real and personal, shall descend and be distributed equally among the children and such persons as legally represent any child who may have died; and if there be no child, nor any legal representative of any child, then equally among the parents and brothers and sisters, and the representatives of deceased brothers and sisters."
Applying this statute to the facts thus far stated would present no difficulties; however, there is a special problem in the case. Two of James nieces, daughters of his dead sister, were adopted some years ago by Joseph and Angelina Bergonzi, the parents of James and the grandparents of the girls. As a result, did each of the girls inherit as a sister of James? That is the question now to be answered.
Our statute dealing with the rights of inheritance of an adopted child is N.J.S.A. 9:3-30 (L. 1953, c. 264). A minor amendment which took effect after James died, L. 1966, c. 196, is not important here. The pertinent statutory language is:
"A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all *418 rights, duties and obligations of any person which are founded upon such relationships including rights of inheritance under the intestate laws of this State; * * *.
B. The entry of a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock. In applying the intestate laws of this State, an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock. * * *"
The sentence I have underlined is the significant one. Plaintiff argues it should be construed to apply solely to rights of inheritance between the adopted child and adopting parents. I think there is no support for such argument in the wording of the statute; and it would have been a simple matter to make clear that inheritance between parent and child was all that was meant, if that had been the meaning. Moreover, Palmer v. Kingsley, 27 N.J. 425 (1958) held N.J.S.A. 9:3-30(B) applicable to the relationship between adopted children and the mother of the adopting parent, thereby recognizing that the statute goes beyond the limited scope for which plaintiff is now contending. Palmer was a tax case in which the testatrix made substantial bequests to her daughter's adopted children. The Division of Taxation assessed inheritance tax at the 8% rate appropriate for unrelated beneficiaries and refused to use the 1% rate provided for transfers to a child "or the issue of any child." N.J.S.A. 54:34-2. After pointing out that the problem was one of legislative construction rather than interpretation of a will, the court quoted from N.J.S.A. 9:3-30(B) and said:
"This language leaves no doubt as to the Legislature's intention to confer upon an adopted child the same status which is conferred upon a natural child by our statutes regulating the transfer of a decedent's property. Equal status comprehends equal treatment in regard to the incidence of taxation upon all such transfers. The conclusion is inescapable that the Legislature intended that an adopted child be included within the meaning of the word `issue' as it appears in the Transfer Inheritance Tax Act." (at p. 431) *419 On the basis of the legislative language as well as the authority of Palmer v. Kingsley, supra, I conclude that the statute created for these two daughters of James's deceased sister the same status under our intestate laws as though they had been born his sisters. Consequently, each of them inherited from him as a sister under N.J.S. 3A:4-4. Also, by being adopted each of them lost the right to the inheritance which she would otherwise have been entitled to as a niece of James. N.J.S.A. 9:3-30(A).
There is in 43 A.L.R.2d 1183 et seq. (1955) an annotation entitled "Right of adopted child to inherit from kindred of adoptive parent." Authorities from other jurisdictions are collected there. The author makes it clear that many courts have held particular adoption statutes do not confer the right to inherit from kindred of the adopting parent. However, a number of courts have recognized such a right under statutes reasonably comparable to our own: Riley v. Day, 88 Kan. 503, 129 P. 524, 44 L.R.A., N.S. 296 (Sup. Ct. 1913); Kolb v. Ruhl's Adm'r, 303 Ky. 604, 198 S.W.2d 326 (Ct. App. 1946); Re Cadwell, 26 Wyo. 412, 186 P. 499 (Sup. Ct. 1920); In Re Nelson's Estate, 266 Wis. 617, 64 N.W.2d 406 (Sup. Ct. 1954); McIntyre v. Hardesty, 347 Mo. 805, 149 S.W.2d 334 (Sup. Ct. 1941).